**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

FRANCIS HELMER, JR.

                                    Plaintiff,

    v.                                       No. 9:09-CV-542
                                                (LEK/DRH)

HERKIMER COUNTY JAIL ADMINISTRATOR,
Administrator; and SHANNON, Nurse, Herkimer
County Jail,

                                    Defendants.

---

**APPEARANCES:**                                    **OF COUNSEL:**

FRANCIS HELMER, JR.
Plaintiff *Pro Se*
08-A-4467
Great Meadow Correctional Facility
Post Office Box 51
Comstock, New York  12821

LEMIRE JOHNSON, LLC                     GREGG T. JOHNSON, ESQ.
Attorney for Defendants                        DANIELLE M. BARONE, ESQ.
2534 Route 9                                                JACINDA HALL CONBOY, ESQ.
Post Office Box 2485
Malta, New York 12020

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Francis Helmer, Jr. ("Helmer"), an inmate in the custody of the New York State Department of Correctional Services, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, Herkimer County ("County"),[2] Herkimer County Jail

---

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

    [2] While Helmer has named the Herkimer County Jail Administrator as a defendant, the real party in interest is Herkimer County.  The court will therefore substitute Herkimer County in place of the originally named defendant, the Herkimer County Jail Administrator.

Administrator Captain Thomas McGrail ("McGrail"),[3] and Nurse Shannon Urtz ("Urtz"),[4] violated his constitutional rights under the Eighth Amendment and his rights under New York State law. Compl. (Dkt. No. 1) at 4. Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 24.) Helmer failed to respond to the motion. For the following reasons, it is recommended that defendants' motion be granted.

## I. Failure to Respond

Helmer did not oppose defendants' motion. "Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Defendants provided such notice here. Dkt. No. 26; see also Dkt. No. 29.. Despite this notice, Helmer failed to respond. "The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically. Champion, 76 F.3d at 436. Even in the absence of a response, a defendant is entitled to summary judgment only if the material facts demonstrate his or her entitlement to

---

See Warren v. Westchester County Jail, 106 F. Supp. 2d 559, 561 n.1 (S.D.N.Y. 2000) (noting that in prisoner's section 1983 action, the correct defendant is Westchester County, not Westchester County Jail); St. John Rennalls v. County of Westchester, 159 F.R.D. 418, 419 n.1 (S.D.N.Y. 1994) (substituting the real party in interest, the County of Westchester, for the originally named defendant, Westchester County Jail).

[3] Although the Complaint identifies this defendant only as "Herkimer County Jail Administrator," defendants provide the identity of the administrator. Defs.' Mem. of Law (Dkt. No. 24-10) at 8.

[4] Although the Complaint identifies this defendant only as "Nurse Shannon," defendants provide her full name. Defs.' Mem. of Law at 8.

judgment as a matter of law.  Id.; Fed. R. Civ. P. 56(c).

Because Helmer has not responded to raise any question of material fact, the facts set forth in defendants' Rule 7.1 Statement of Material Facts (Dkt. No. 24-9) [hereinafter "Defs.' 7.1 Statement"] are accepted as true.  See, e.g., Lopez v. Reynolds, 998 F. Supp. 252, 256 (W.D.N.Y. 1997); see also N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original)

## II.  Background

On January 7, 2008, Helmer was arrested for assault in the first degree, and was remanded to the Herkimer County Jail ("HCJ") where he was held as a pretrial detainee. Defs.' 7.1 Statement ¶¶ 1, 4.  Helmer claims to have taken psychiatric medication since the age of nine because he suffers from paranoid schizophrenia.  Id. at 5.  He claims that HCJ correctional officers were not qualified to administer psychiatric medication.  Id. Defendants allegedly refused to transfer him to Oneida County Jail ("OCJ"), which employs psychiatric personnel, even though other inmates with mental health issues were transferred to OCJ on a daily basis.  Id.  Helmer accuses Urtz of increasing his psychiatric medication without consulting psychiatric or other medical personnel.  Id.  Helmer alleges that HCJ's medical staff consisted only of Urtz who must consult with an outside nurse practitioner who visits the jail only once a week.  Id.  On August 20, 2008, Helmer was transferred to New York State custody.  Id. ¶ 5.

Helmer's mental health history was obtained by HCJ staff upon admission to the

facility. Defs.' Rule 7.1. Statement ¶ 9. Helmer received one-on-one supervision upon his admission on January 7 through January 10, 2008. Id. ¶ 10. On January 8 and 9, 2008, Ward Halverson, a Licensed Clinical Social Worker who provided mental health services at HCJ, examined Helmer. Id. ¶ 11. HCJ medical and mental health staff evaluated Helmer and arranged for him to be admitted to Central New York Psychiatric Center ("CNY Center") on January 10. Id. at 12. He remained at CNY Center until January 23, 2008.

Helmer claimed that he had conflicts with the therapeutic assistants at CNY Center. Defs.' 7.1 Statement ¶ 13. Helmer wanted to return to HCJ and was discharged back to HCJ on January 23, 2008, where he was determined to be in stable condition. Id. ¶¶ 14-15. Helmer was incarcerated at HCJ from January 23, through March 6, 2008, when he was transferred to Fulton County Jail ("FCJ"). Id. ¶ 171. He was told that he was transferred to FCJ because FCJ had a staff psychiatrist. Id. ¶ 19. He received mental health treatment by a psychiatrist and therapist while at FCJ. Id. ¶ 18. In March 2008, Helmer said he wanted to return to HCJ because he "learn[ed] to trust Ward Halverson." Id. ¶ 21. Helmer returned to HCJ on March 13, 2008, where he remained until August 20, 2008. Id. ¶ 23.

Helmer was seen by medical staff or mental health personnel and/or received medications on 204 of the 207 days that he was incarcerated at HCJ. Defs. 7.1 Statement ¶ 25. Urtz was present for many of the medication passes. Id. Other medical HCJ medical staff included Nurse Practitioner Charlene Macri ("Macri") and Dr. Luke Handy ("Handy"). Id. ¶ 26. Macri, who was authorized to write prescriptions, prescribed medications to Helmer while he was incarcerated at HCJ. Id. ¶ 30. Urtz, who was not authorized to write prescriptions, never increased or decreased Helmer's medication

4

dosage. Id. ¶ 33. McGrail did not personally participate in Helmer's medical treatment while Helmer was incarcerated at HCJ. Id. ¶ 27.

While at HCJ, Helmer was seen by a mental health provider at least thirty-seven times. Id. ¶ 63. Halverson saw Helmer on a weekly basis at HCJ. Id. ¶ 35. Halverson saw Helmer twice in the same week in eleven of the approximately thirty weeks that Helmer was incarcerated at HCJ. Id. ¶ 36. Helmer testified that medical treatment at HCJ was "good," and that the medical treatment at HCJ was up to "good standards." Id. ¶¶ 37-38. He said that he was satisfied with the care he received from Halverson. Id. ¶ 41. Helmer's only complaint about his mental health treatment was that he was not sent back to a psychiatric hospital. Id. ¶ 42.

CNY Center placed Helmer on mental health medication in January 2008. Id. ¶ 43. An FCJ psychiatrist later increased the medication and prescribed additional mental health medication. Id. ¶¶ 44-45. While at HCJ, Helmer's mental health medication was changed only twice; once in February and again in April. Id. ¶ 46. This change was made at the recommendation of Halverson. Id. ¶ 47. Helmer agreed to the April medication change after discussions with Halverson. Id. ¶ 48. Both changes were made by Macri. Id. ¶ 47.

Upon entering HCJ, Helmer received a copy of the facility's Inmate Handbook and Rulebook. Id. ¶ 49. Helmer signed an acknowledgment that he received "Rulebook #21" on January 7, 2008. Id. ¶¶ 50-51. The HCJ Inmate Handbook describes the grievance procedure for inmates. Id. ¶ 52. Initial complaints were to be filed within five days of the act or situation giving rise to the grievance. Id. The inmate was then required to attempt to verbally resolve the issue with the Housing Unit Officer ("HUO") who was present for the situation. Id. The HUO was then required to address the complaint in writing. Id. If the

dosage. Id. ¶ 33. McGrail did not personally participate in Helmer's medical treatment while Helmer was incarcerated at HCJ. Id. ¶ 27.

While at HCJ, Helmer was seen by a mental health provider at least thirty-seven times. Id. ¶ 63. Halverson saw Helmer on a weekly basis at HCJ. Id. ¶ 35. Halverson saw Helmer twice in the same week in eleven of the approximately thirty weeks that Helmer was incarcerated at HCJ. Id. ¶ 36. Helmer testified that medical treatment at HCJ was "good," and that the medical treatment at HCJ was up to "good standards." Id. ¶¶ 37-38. He said that he was satisfied with the care he received from Halverson. Id. ¶ 41. Helmer's only complaint about his mental health treatment was that he was not sent back to a psychiatric hospital. Id. ¶ 42.

CNY Center placed Helmer on mental health medication in January 2008. Id. ¶ 43. An FCJ psychiatrist later increased the medication and prescribed additional mental health medication. Id. ¶¶ 44-45. While at HCJ, Helmer's mental health medication was changed only twice; once in February and again in April. Id. ¶ 46. This change was made at the recommendation of Halverson. Id. ¶ 47. Helmer agreed to the April medication change after discussions with Halverson. Id. ¶ 48. Both changes were made by Macri. Id. ¶ 47.

Upon entering HCJ, Helmer received a copy of the facility's Inmate Handbook and Rulebook. Id. ¶ 49. Helmer signed an acknowledgment that he received "Rulebook #21" on January 7, 2008. Id. ¶¶ 50-51. The HCJ Inmate Handbook describes the grievance procedure for inmates. Id. ¶ 52. Initial complaints were to be filed within five days of the act or situation giving rise to the grievance. Id. The inmate was then required to attempt to verbally resolve the issue with the Housing Unit Officer ("HUO") who was present for the situation. Id. The HUO was then required to address the complaint in writing. Id. If the

inmate disagreed with the HUO's written determination, the inmate could appeal to the Supervisor who was required to respond in writing.  Id.  If the inmate disagreed with the Supervisor, he could appeal to the Grievance Coordinator.  Id.  If the inmate disagreed again, he could appeal to the Chief Administrative Officer.  Id.  A final appeal could be made to the Commissioner of Correction.  Id.

Helmer filed four grievance complaints while at HCJ.  Id. ¶ 54.  Three of the four complaints were resolved at the Supervisor-level to Helmer's satisfaction.  Id. ¶ 55.  The fourth grievance was appealed through the Jail Administrator-level but was not appealed to the Commissioner of Correction.  Id. ¶ 56.  This fourth grievance dealt with a mental health session that was cut short because of a fire.  Id. ¶ 57.  This session was later rescheduled.  Id.  Helmer never filed a grievance about his medication, and he never filed a grievance requesting placement or relocation to a hospital or to OCJ.  Id. ¶¶ 58-61.

### III.  Discussion

Helmer alleges that his incarceration at HCJ violated his Eighth Amendment rights because defendants were deliberately indifferent to his psychiatric condition.  Defendants seek summary judgment on the grounds that (1) Helmer failed to exhaust administrative remedies; (2) Helmer was not protected by the Eighth Amendment as a pretrial detainee; (3) defendants did not act with deliberate indifference; (4) defendants were not personally involved; (5) McGrail and Urtz are entitled to qualified immunity; (6) Helmer neither pled nor established municipal liability; and (7) Helmer's state law claims are barred because he did not satisfy a condition precedent pursuant to the New York General Municipal Law.

6

See generally Defs.' Mem. of Law.

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Id. at 586. It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-moving party special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude,"; that a *pro se* litigant's submissions must be construed "liberally,"; and that such submission must be read to raise the strongest arguments that they "suggest[.]"  At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, or arguments that the submissions themselves do not "suggest,"; that we should not "excuse frivolous or vexatious filings by *pro se* litigants," and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."

Id. (internal citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.") (citations omitted).

### B. Personal Involvement

McCrail and Urtz argue that they were not personally involved in any alleged constitutional violations.  Defs. Mem. of Law at 17-19.  Personal involvement is an essential prerequisite for § 1983 liability.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  A section 1983 defendant, however, cannot be liable "merely because he held a supervisory position of authority."  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Supervisory personnel may be considered "personally involved" only if the defendant: (1) directly participated in the alleged constitutional violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that a violation was occurring.  Colon

v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[5]

### 1. McCrail

McGrail has been serving as HCJ'S Administrator since 1989. McCrail Aff. (Dkt. No. 24-2) ¶ 3. His duties included supervising facility operations, overseeing the facility's daily activities, and addressing inmate grievances. Id. ¶ 4. Although Helmer named the Jail Administrator as a defendant (Compl. at 1), Helmer has not proffered any facts demonstrating that McCrail was personally involved in any alleged unconstitutional conduct. As such, defendants' motion as to McCrail on this ground should be granted.

### 2. Urtz

Helmer alleges that his psychiatric medication was increased by Urtz. Compl. at 5. Helmer accuses Urtz of taking this action without consulting other medical personnel. Id. As a registered nurse, Urtz was authorized to administer medications but she was not authorized to write prescriptions. Urtz Aff. (Dkt. No. 24-8)[6] ¶ 13. Thus, a jury could

---

[5] The Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), arguably casts in doubt the continued viability of some of the categories set forth in Colon. See Sash v. United States, 674 F. Supp. 2d 531 (S.D.N.Y. 2009). Here, the Court will assume *arguendo* that all of the Colon categories apply.

[6] Dkt. No. 24-8 is the docket number for the Notice of Sealed Documents. The documents were ordered sealed because they relate to Helmer's medical condition and to protect his privacy to the extent possible. See N.D.N.Y.L.R. 8.1 (medical records should be protected where possible); see also Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006). The seal documents submitted by defendants are Urtz's affidavit, Helmer's medical records (Ex. B), a chart prepared by defendants regarding Helmer's medical treatment (Ex. C), Helmer's exhibits from CNY Center (Ex. E), and Helmer's

conclude that Urtz was personally involved in the alleged constitutional violations because the alleged increase of medication could refer to Urtz's role in administering the medication. Accordingly, defendants' motion for summary judgment as to Urtz on the ground of lack of personal involvement should be denied.

### C. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83 (2006). This exhaustion requirement applies to all prison condition claims. Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 U.S. F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). When an inmate fails to exhaust administrative remedies, a court must conduct a three-part inquiry to determine if such failure is fatal to his or her claims. A court must consider whether:

> (1) administrative remedies are [] available to the prisoner; (2) defendants have either waived the defense or failure to exhaust or

---

records from FCJ (Ex. F).

>acted in such a way to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)). The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinarily fairness" would have deemed it accessible." Id. at 688.

Helmer acknowledged that he received a copy of HCJ Rulebook #21 upon entering HCJ. Pl.'s Booking Records (Dkt. No. 24-4) at 3. On at least four separate occasions Helmer followed the grievance procedures set forth in the Inmate Handbook. Pl.'s Grievances (Dkt. No. 24-7); Inmate Handbook (Dkt. No. 24-5) at 39-41. Thus, Helmer was aware of and understood the HCJ grievance procedures. Helmer did not complain of Urtz's alleged improper increase medication and he did request relocation to a hospital or to OCJ, which are the issues in the instant action, in any of the four grievances that he had filed. See generally Pl.'s Grievances. Helmer has failed to respond to defendants' motion to contend that there were appropriate reasons why he failed to exhaust his administrative remedies. Thus, defendants' motion should be granted on this ground.

### D. Eighth and Fourteenth Amendment Claims

Helmer asserts that defendants acted with deliberate indifference in violation of his Eighth Amendment rights. Compl. at 4. The Eighth Amendment explicitly prohibits the

11

infliction of "cruel and unusual punishment."  During the time in question Helmer was housed at HCJ as a pretrial detainee.  Pl.'s Booking Records at 4-5.  The Eighth Amendment protections apply to those who have been convicted of a crime and sentenced, and thus suffering the "punishment" contemplated by the Cruel and Unusual Punishment Clause.  Benjamin v. Fraser, 343 U.S. F.3d 35, 49-50 (2d Cir. 2003) (citing cases).

Claims concerning the conditions of confinement brought by a pretrial detainee, such as Helmer, must be analyzed under the Fourteenth Amendment's Due Process Clause.  Id.  The standards when evaluating deliberate indifference to a person in custody are identical whether under the Eighth or Fourteenth Amendment.  Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); see also Shane v. Winnebego County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . [including] food, clothing, shelter, medical care, and reasonable safety . . . .").  Accordingly, cases analyzed under the Eighth Amendment provide guidance in analyzing cases, as here, considered under the Fourteenth Amendment.  Therefore, Helmer's medical indifference claim will be considered under Eighth Amendment standards.

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This prohibition extends to the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a section

1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

### 1. Serious Medical Condition

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Although there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). An inmate need not "demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do[es] [this Court] require a showing that his or her condition will degenerate into a life threatening one." Id. at 163. This "'component of an Eight Amendment claim is . . . [necessarily] contextual' and fact-specific." Smith, 316 F.3d at 185 (quoting Hudson, 503 U.S. at 8). Thus, the "serious medical need inquiry must be

13

tailored to the specific circumstances of each case." Id.

"Treatment of mental disorders of a mentally disturbed inmate is . . . a serious medical need" as contemplated by Estelle v. Gamble, 429 U.S. 97 (1976). Guglielmoni v. Alexander, 583 F. Supp. 821, 826 (D. Conn. 1984). "[I]n the context of suicide, jailers are not required to safeguard every inmate; only those presenting a 'strong likelihood of suicide' are entitled to protection." Burke v. Warren County Sheriff's Dep't, No. 900-CV-597, 1994 WL 675042, at *6, 1994 U.S. Dist. LEXIS 17233, at *19-20 (N.D.N.Y. Nov. 25, 1994) (internal citations omitted). "[T]o establish a strong likelihood of suicide, a detainee must have made a previous threat of or an earlier attempt at suicide." Id. Helmer's booking slip upon entering HCJ indicated that he was suicidal. Pl.'s Booking Records at 4. This indication is sufficient to raise a question of fact as to a serious medical need.

### 2. Deliberate Indifference

Helmer, however, must also demonstrate that defendants' acted with deliberate indifference. Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. To be "sufficiently culpable," the defendant must "know[] of and disregard[] an excessive risk to inmate health and safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that reference." Farmer, 511 U.S. at 837. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. at 104.

14

"Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Here, there is nothing in the record to show that defendants acted with deliberate indifference. Upon admission into HCJ on January 7, 2008, Helmer received one-on-one supervision because there were indications that he was suicidal. Pl's Booking Records at 4; see generally Ex. E. Three days later he was transferred to the CNY Center for mental health treatment. Pl.'s Booking Records at 5; Ex. E at 2. Helmer's treatment at CNY Center included "weekly psychiatric evaluations and medication prescription." Ex. E. at 9. He also participated in treatment programming to stabilize his mental health. Id. CNY Center nurses also provided medication education and administered the prescribed medications. Id. Helmer returned to HCJ on January 23, 2008, after complaining about the temperature of his food, the hallway lights being left on at night, and his medical care. Id. at 3. Upon discharge from CNY Center, he was "doing reasonably well," and he denied having any thoughts of suicide, hallucinations, or delusions. Id. at 4. In fact, CNY Center granted the discharge because Helmer "[was] not a danger to himself or others." Id.

Helmer returned to HCJ on January 23, 2008, but he was transferred to FCJ on March 6, 2008. Pl.'s Booking Records at 5; Ex. F at 5. At FCJ, Helmer received Hemeron

15

and Seroquel, which are antidepressants. Ex. F. at 3-4, 6. There was no evidence that Helmer was either delusional or hallucinating at FCJ. Id. at 2. Although Helmer indicated that he was depressed, he was not suicidal during his stay at FCJ. Id. at 5. Helmer returned to HCJ on March 12, 2008, because he had "learn[ed] to trust Ward Halverson," an HCJ social worker. Pl.'s Dep. Tr. (Dkt. No. 24-3) at 22. At HCJ, medical staff examined plaintiff approximately thirty-seven times. See generally Ex. B. During his thirty-week stay at HCJ, Halverson saw Helmer on a weekly basis, and Halverson saw Helmer twice in the same week in eleven of those thirty weeks. See generally id.

      Helmer was transferred to two different facilities so that he could received mental health treatment. He returned to HCJ at *his* request. At HCJ, he regularly saw Halverson, Helmer's preferred mental health provider. Thus, there is nothing in the record to show that Helmer was treated with deliberate indifference while he was at HCJ. Further, Helmer has not shown that Urtz acted with deliberate indifference when she allegedly altered the dosage. In fact, there is nothing in the record to show that Urtz altered Helmer's dosage at all. Even if Urtz altered the dosage when she administered the medication, there is no evidence to show that she acted with deliberate indifference. While any alteration by Urtz may show negligence, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway, 99 F.3d at 553. The record is devoid of any indication that Urtz acted recklessly.

      As such, it is recommended that defendants' motion as to Helmer's medical indifference claim be granted.

### E. Municipal Liability

Defendants claim that even if Helmer's constitutional claims are substantiated, Helmer has neither pled nor shown that the unconstitutional acts occurred as a result of municipal custom or policy. "A claim under § 1983 asserted against a municipality must allege that a deprivation of the plaintiff's constitutional rights resulted from a custom or policy of the municipality." Perez v. County of Westchester, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). "Such a claim cannot be based on the theory of respondeat superior [and] . . . there must be proof of such a custom or policy in order to permit recovery on claims against individual . . . employees . . . ." Id. (citations omitted).

Here, the County has proffered facts to show that it had comprehensive policies and procedures regarding inmates with psychiatric conditions. See generally Ex. H (Dkt. No. 24-6.) Helmer has failed to proffer any facts that would establish a County custom or policy responsible for the alleged deprivation of constitutional rights. Accordingly, defendants' motion for summary judgment should be granted on this ground as to the County.

### F. State Law Claims

Without specifying which law defendants violated, Helmer contends that defendants have also violated New York State law. Compl. at 4. "A violation of state law neither gives [Helmer] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim." Doe v. Conn. Dep't of Child & Youth Servs., 911 F.2d 868, 869 (2d

Cir. 1990) (internal quotation marks and citations omitted); see also Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."). Accordingly, for this reason alone, the defendants' motion to dismiss should be granted as to Helmer's state law claims.

Moreover, "[i]n the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." Butler v. LaBarge, No. 9:09-CV-1106 (GLS/DRH), 2010 U.S. Dist. LEXIS 104701, at *9, 2010 WL 3907258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 121-22 (2d Cir. 2006)).  When all federal claims are eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal.  See Kolari, 455 F.3d at 122.  A court may nevertheless choose to exercise jurisdiction if a state law claim raises an important question of federal policy.  See id. at 122-23.  Here, Helmer has failed to establish a federal claim or an important issue of federal policy.  Thus, in light of the recommendations herein as to Helmer's federal claims, ,it is  recommended in the alternative that the court decline to exercise pendent jurisdiction over plaintiff's state law claims.

### G.  Qualified Immunity

Even if Helmer's constitutional claims are substantiated, defendants claim that they are entitled to qualified immunity.  Qualified immunity generally protects governmental

officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002), aff'd, 80 F. App'x 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citing Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. A prisoner's right to adequate medical treatment is a clearly established constitutional right. See, e.g., Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 U.S. Dist. LEXIS 611, at *17 (S.D.N.Y. Jan. 26, 1999) ("It is clearly established that inadequate medical care can give rise to an Eighth Amendment constitutional violation where prison officials are deliberately indifferent to an inmate's serious medical needs.") (internal citations omitted). Here, however, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Helmer's allegations as true, he has not shown that either defendant violated his constitutional rights.

Accordingly, it is recommended in the alternative that defendants' motion on this

ground be granted.

## IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED** and that judgement be entered in favor of both defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.D.N.Y.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

DATED:  February 24, 2011         _David R. Homer_
                                  David R. Homer
                                  U.S. Magistrate Judge